# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ADITI SARKAR, *as personal representative*
*of the Estate of Darrell K. Danner*,

        Plaintiff,

v.                                        CV 12-0861 WPL/LAM

HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before me on a dispute over which state law governs an automobile insurance policy. Plaintiff Aditi Sarkar argues that New Mexico law governs the contract, and under New Mexico law she should be able to "stack"[1] her underinsured motorist ("UIM") coverage. (Doc. 45; Doc 46.) Defendant Hartford Insurance Company of the Midwest counters that the insurance policy is subject to Oregon law, which holds that the anti-stacking provision in her insurance policy is enforceable. (Doc. 49.) Pursuant to 28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73(b), the parties consented to have me serve as the presiding judge and enter a final judgment. After carefully considering the motions, the pleadings, and the relevant law, I find that there are insufficient facts to determine the choice of law question, so I must deny Sarkar's partial motion for summary judgment (Doc. 45) and deny in part Hartford's motion for

---

[1] Stacking aggregates coverage when one policy includes multiple automobiles. *See Montano v. Allstate Indemnity Co.*, 92 P.3d 1255, 1256 (N.M. 2004); *Hendren v. Allstate*, 672 P.2d 1137, 1139 (N.M. Ct. App. 1983). If a policy has a $100,000 UIM coverage limit per vehicle, and there are two vehicles on the policy, then the stacked amount is $200,000.

summary judgment (Doc. 49). Since New Mexico's relevant case law is ambiguous, I will grant

in part Hartford's motion for summary judgment with respect to Sarkar's bad faith claims.

FACTUAL & PROCEDURAL BACKGROUND[2]

Darrell Danner was a resident of Las Cruces, New Mexico, since at least 2004, and until

his death in November 2012. (Doc. 46 at 3; Doc. 55 Ex. 1 at 3.) In 2005 or earlier, Danner

purchased an automobile insurance policy for a Ford F-150 truck from Hartford. (Doc. 49 Ex. 1.)

Although Danner owned the truck, his adult son retained possession of the truck at his home in

Scappoose, Oregon. (Doc. 49 at 2.) Danner's insurance policy reflected that the truck was

principally garaged in Oregon at his son's address, but the mailing address for the policy was

listed as Danner's P.O. Box in Las Cruces, New Mexico. (Doc. 49 at Ex. 1.)

In August 2006, Danner purchased a 2006 Chrysler while visiting his son in Oregon.

(Doc. 49 at 3.) He registered the car in Oregon using his son's address. (*Id*.) Danner added the

Chrysler to the Hartford insurance policy and indicated that the Chrysler was principally garaged

in Oregon, even though he kept the Chrysler at his home in Las Cruces, New Mexico. (Doc. 46

at 3; Doc. 49 Ex. 4.) Danner renewed his policy every year in December, and every year from

2006 to 2009, Danner's policy indicated that the Chrysler was registered to and principally

garaged in Oregon. (Doc. 49 Exs. 6-9.) Under the terms of the policy, Danner's premium was

based in part on the place of principal garaging. (Doc. 49 Ex. 10 at 17.) The policy was mailed

each year to Danner's address in New Mexico, and he paid all premiums "from New Mexico."

---

[2] All facts are uncontested unless stated otherwise. In her reply, Sarkar argues that because
Harford failed to comply with the local rules in its response to her statement of undisputed material facts
(Doc. 55 at 2-5), I should find that all of Sarkar's facts are undisputed. (Doc. 57 at 2 (citing D.N.M.LR-
Civ. 56.1(b) ("Each fact in dispute must be numbered . . . . Each additional fact must be lettered.")).)
While Sarkar is correct that Hartford's response does not comport with the rules, in the spirit of fairness, I
will consider the disputed facts.

(Doc. 49 Exs. 6-9; Doc. 54 at 8.) Danner did not have a local insurance agent in New Mexico, and he conducted all business with Hartford through the telephone. (Doc. 46 at 6.)

On April 9, 2010, Danner was in a motor vehicle accident in Las Cruces, New Mexico, while driving the Chrysler. (*Id.* at 2.) Clarissa Nanawa, an Auto Service Representative for Hartford, prepared a vehicle evaluation report after inspecting the vehicle in a Las Cruces repair shop and without reviewing the insurance policy. (Doc. 46 Ex. 16; Doc. 56 Ex. 2.) At the time, she had "no personal knowledge about where the vehicle was actually principally garaged." (Doc. 56 Ex. 2 at 2.) Brittney Watkins, a Hartford claims processor, sent Nanawa's report to Danner with a letter explaining that the total loss calculation was specific to New Mexico and that it was based on information such as "the Vehicle Identification Number, mileage, conditions, options and the zip code where it is garaged." (Doc. 46 Ex. 16.)

On January 7, 2011, after the car accident, Danner registered his Chrysler in New Mexico. (Doc. 49 at 7.) That April, Danner received an updated insurance policy, which included both the Chrysler and his wife's Ford Explorer and indicated that both cars were registered and principally garaged in New Mexico.[3] (*Id.*)

Danner ultimately settled with the insurance company of the other driver involved in the accident for $100,000. (Doc. 42 at 2.) After settling, Danner made a claim of $100,000 with Hartford based on his belief that he could stack his UIM coverage.[4] (Doc. 46 at 17.) In a letter dated June 21, 2012, Hartford denied Danner's claim, informing him that his policy as of April 9, 2010, contained an anti-stacking provision. (Doc. 49 at 7.) On July 30, 2012, Hartford later sent a

---

[3] Hartford asserts that Danner requested that his policy be changed to a New Mexico policy (Doc. 49 at 7); Sarkar disputes this point and argues that there are no facts to show that Danner made such a request (Doc. 54 at 5).

[4] Danner had a policy that provided $100,000 in UIM coverage. Under New Mexico's stacking system, since he had two policies, he would be entitled to $200,000, less the amount he recovered from the other driver, $100,000, which would total $100,000.

notarized letter to Danner that attached a complete copy of the insurance policy effective on the day of the accident. (Doc. 46 Ex. 15; Doc. 49 Ex. 9.) However, the parties dispute which policy was actually attached to that letter. Hartford claims that it attached to its motion a complete and accurate copy of the letter sent to Danner, including an insurance policy which is labeled "Personal Injury Protection Oregon." (Doc. 49 Ex. 9 at 8.) The policy lists "Oregon" in several of the policy headings and references Oregon law repeatedly. (*Id.* at 8, 10, 12, 21, 22, 23, 24, 25, 26, 27, 37; Doc. 55 at 4.) The policy also contains an anti-stacking provision. (Doc. 49 Ex. 9 at 29.)

Sarkar, Danner's widow, testified that she did not recall receiving documents at any time that indicated that she and Danner had an Oregon policy. (Doc. 54 Ex. 1 at 13.) She also stated she found a New Mexico insurance policy handbook in her files at home (Doc. 54 Ex. 8 at 1-2), but this handbook is undated (*id*. at 3), and she did not say when she received it. By her own account, her files were not organized, and it was typical for mail to go unopened for months. (Doc. 55 Ex. 1 at 11-12.) She also testified that she would not have known which insurance materials Hartford would have sent to their home because Danner handled the mail. (*Id.* at 9.)

After a failed attempt to negotiate with Hartford through an attorney, Danner filed this lawsuit in state court (Doc. 1 Ex. 1), which Hartford subsequently removed to federal court on August 9, 2012 (Doc. 1). Danner sought a declaratory judgment that he is entitled to stack his coverage, in addition to damages for breach of contract, breach of the covenant of good faith and fair dealing, insurance bad faith and breach of fiduciary duties, unfair insurance claims practices, and unfair trade practices. (Doc. 1 Ex. 1 at 1-11.) During discovery, Danner passed away and his widow, Sarkar, substituted in as the personal representative on behalf of the estate of Darrell K.

Danner. (Doc. 41.) The parties then filed their motions for summary judgment, which are presently before me.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 facilitates the entry of judgment without a trial when the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). In considering the facts, the court must construe all facts in the light most favorable to the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

DISCUSSION

## I.     Choice of Law

Under New Mexico law, UIM insurance protection can be stacked, *Konnick v. Farmers Ins. Co. of Arizona*, 703 P.2d 889, 891 (N.M. 1985), and UIM limits are offset by the tortfeasor's liability coverage*, Schmick v. State Farm Auto. Ins. Co*., 704 P.2d 1092, 1099 (N.M. 1985). While the New Mexico Supreme Court has declined to condemn anti-stacking provisions altogether, it has clarified that such provisions will only be permissible when insurance companies receive written rejections from the insured. *See Montano,* 92 P.3d 1255, 1256. Under Oregon law, however, anti-stacking provisions in insurance policies are enforceable. *VanWormer v. Farmers Ins. Co.*, 15 P.3d 612, 615 (Or. Ct. App. 2000); *see also* OR. REV. STAT. § 742.504(9)(a) (2011). It is undisputed that Danner's policy contained anti-stacking language, so

5

the enforceability of this provision and outcome of this case turn on whether New Mexico or Oregon law governs the contract.

When a federal court sits in diversity and must determine which state law to apply, the court must apply the choice of law rules of the state in which it sits. *See Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 217 (10th Cir. 1992) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)). Since this court sits in New Mexico, I will employ New Mexico's choice of law rules. *Id*.

In New Mexico, courts will apply the law of the state where the contract was made or executed. *See O'Toole v. Northrop Grumman Corp.*, 305 F.3d 1222, 1225 (10th Cir. 2002) (citing *Shope v. State Farm Ins. Co.*, 925 P.2d 515, 516, 517 (N.M. 1996)); *Sheppard v. Allstate Ins. Co.*, 21 F.3d 1010 (10th Cir. 1994) (citing *State Farm Mut. Ins. Co. v. Conyers,* 784 P.2d 986 (N.M. 1989)). Also referred to as *lex loci contractus*, this rule holds that a contract is governed in the place where the last act necessary for its consummation is formed, *see Conyers,* 784 P.2d at 991 (citing *Pound v. Ins. Co. of N. Am.*, 439 F.2d 1059, 1062 (10th Cir. 1971)), which is often the place where the last signature is affixed to the contract, *id.* (citing *Brashar v. Mobil Oil Corp.*, 626 F. Supp. 434, 436 (D.N.M. 1984)).

On closer examination, though, it appears as if the characterization of the law as mandating a strict application of *lex loci contractus* is not entirely accurate, and the law contains some ambiguity. In 1989, the New Mexico Supreme Court handed down *Conyers*, which held that New Mexico law applied to an automobile insurance contract that was formed in New Mexico, even though the insureds resided in Nevada and the accident occurred in Nevada. *See* 784 P.2d at 990-91. The Conyers had purchased automobile insurance from an agent located in

Silver City, New Mexico, and later moved to Nevada. *Id*. The insured car was registered in New Mexico, and the Conyers never disclosed the move to the insurance company. *Id*.

The Conyers asked the court not to apply the *lex loci contractus* rule "mechanically"; instead, they argued that the court should adopt the significant relationship test from the Restatement (Second) of Conflicts of Law.[5] *Id*. at 990. The court held that

> New Mexico courts have not necessarily mechanically applied the lex loci contractus rule. In any event, in this case it is not necessary for us either to reaffirm a lex loci contractus rule categorically or to adopt or reject for all cases the Restatement (Second) 'significant relationship' [test]. Even were we to apply a Restatement (Second) analysis, New Mexico law would still govern the outcome of this particular dispute.

*Id*. (internal citations omitted). *Conyers* reasoned that under the significant relationship test, New Mexico law would apply because New Mexico was the "principal location of the insured risk, at least as disclosed in the application." *Id.* at 991. Under *lex loci contractus*, since the Conyers purchased the insurance from a State Farm insurance agent in New Mexico, this was sufficient to show that the applications were signed in the state, so New Mexico law still applied. *Id*. The court held that under either approach, it was irrelevant that the Conyers were residents of Nevada. *Id*.

Seven years later, in *Shope*, the New Mexico Supreme Court applied *Conyers* to a dispute over whether Virginia or New Mexico law applied to an anti-stacking provision in an automobile insurance contract. *Shope* began its analysis by stating that *Conyers* had held that "the law of the state where an insurance contract was made, not the law of the state where the insureds resided and where the accident occurred," governed the contract. 925 P.2d at 516. While this is technically correct, in that *Conyers* had found the residency of the insured and location of the

---

[5] Under the significant relationship test, "the rights created by a contract of casualty insurance are determined by the law of the state which the parties understood was to be the principal location of the insured risk, unless some other state has a more significant relationship to the transaction and the parties." *Conyers*, 784 P.2d at 990 (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 193).

accident to be irrelevant in that case, *Shope*'s language implies that the court had only applied

the rule of *lex loci contractus*. Shortly thereafter, *Shope* describes the holding of *Conyers* more

thoroughly:

> This Court held 'the policy of New Mexico's law governing a contract of
> insurance applied for and issued in this state . . . on a vehicle at least assumed to
> be located here and owned by an individual who declared his residence as being
> here, seems to us to weigh more heavily than any possibly countervailing policy
> that would underlie the applicability of Nevada law here.'

*Id.* (quoting *Conyers,* 784 P.2d at 990-91.) *Shope* then clarified that *Conyers* concluded that New

Mexico law would have applied under either *lex loci contractus* or the significant relationship

test. *Id*.

     *Shope* ultimately held that since the insured car was registered in Virginia, the insurance

policy was purchased in Virginia, the premiums were paid from the insured's Virginia bank, and

the administration of the insurance policy was never transferred to New Mexico, that Virginia

law applied. *Id*. at 516. This holding seems to blend factors from both the *lex loci contractus* test

and the significant relationship test. However, in its conclusion, *Shope* states explicitly that "the

Shopes and State Farm entered into a contract in Virginia. We have stated that the policy of New

Mexico is to interpret insurance contacts according to the law of the place where the contract was

executed." *Id*. at 517.

     The state of New Mexico law is unclear: *Conyers* avoided a decision, and *Shope* appears

to have reaffirmed the use of *lex loci contractus* despite citing factors from both tests.

Accordingly, subsequent state and federal cases have performed a rote application of the *lex loci

contractus* rule. *See e.g.*, *O'Toole*, 305 F.3d at 1225; *Sheppard*, 21 F.3d at 1010; *State Farm Mut.

Auto. Ins. Co. v. Ballard*, 54 P.3d 537, 539 (N.M. 2002) (citing *Shope*, 925 P.2d at 516).

If I were to apply the significant relationship test, Oregon law would govern the enforcement of the policy. The facts show that Hartford believed that the insured risk was located in Oregon based on Danner's repeated affirmations that the car was principally garaged in Oregon and the fact that the car was registered to his son's address in Oregon. Furthermore, the policy in force at the time of the accident was clearly labeled as an Oregon policy.[6] This result is affirmed by language in *Conyers* that emphasized the importance of a state's interest in regulating insurance contracts for vehicles driven on its own roads. 784 P.2d at 990-91.

However, post-1989 case law in the Tenth Circuit and New Mexico have held that New Mexico applies *lex loci contractus*, and "federal courts are bound to follow the decisions of the courts of the state . . . [and] it is the duty of the Federal court . . . to conform its decision and judgment to the latest decision of the supreme court of the state." *Chicago, R. I. & P. R. Co. v. Hugh Breeding, Inc.,* 247 F.2d 217, 223 (10th Cir. 1957). While I believe that these cases have failed to recognize the nuances in New Mexico law, in part because the facts of those case did not demand a close examination of the rule, it is not for me to overrule the New Mexico Supreme Court on matters of pure state law.[7] Thus, I must apply *lex loci contractus* in the present matter.

---

[6] Sarkar challenges Hartford's assertion that Danner was ever issued an Oregon policy. (Doc. 54 at 3-4.) However, she also admitted that she did not handle insurance matters or go through the mail regularly, so she would have no personal knowledge of the terms of the policy. (Doc. 54 Ex. 8 at 1-2.) Her files were disorganized, and mail went unopened, so the fact that she could not find an Oregon policy in the house is not proof that Hartford never issued or sent Danner an Oregon policy. (Doc. 55 Ex. 1 at 11-12.) Since she has no personal knowledge of the insurance policy in effect on April 9, 2010, her testimony on this matter is inadmissible. *See* Fed. R. Evid. 602. The only evidence in the record regarding the type of policy at the time of the accident is the letter from Hartford dated July 30, 2012, which attached a copy of an Oregon policy. (Doc. 49 Ex. 9.) While Sarkar did find and include a copy of an insurance policy handbook with "New Mexico" on the cover, she cannot say when she received this handbook, and it is undated. (Doc. 46 Ex. 14.) There is no evidence to support her suggestion that she was sent the New Mexico policy prior to the accident, as opposed to after the accident, when Hartford issued new policy paperwork to Danner.

[7] A strict application of *lex loci contractus* for auto insurance contracts could potentially lead to absurd results. Today's society is not the society in which this rule originated, and individuals regularly relocate around the United States and transact business over the internet or phone. It is not difficult to

Before I determine the state in which the policy was executed, I need to identify the appropriate contract. Both parties begin their choice of law analysis with Danner's purchase of the Chrysler in Oregon in 2006. However, under New Mexico law, the addition of a new car to a pre-existing policy does not necessarily create a new contract. *See Vigil v. Rio Grande Ins. of Santa Fe*, 950 P.2d 297, 302 (N.M. Ct. App. 1997). This is because an insurance contract insures the person, not the vehicle. *Id.* (citations omitted). If the insurance contract automatically permits the insured to add a new car on to the policy without filing a new application for coverage, then no new contract is formed. *Id.*

The exhibits before me do not include the original policy in force at the time the Chrysler was purchased; however, the parties agree that the Chrysler was "added" to Danner's original policy containing the Ford. (Doc. 46 at 4; Doc. 49 at 3.) Notably, the record does not indicate that a separate application for coverage was completed by Danner in August 2006, when he purchased the Chrysler. I may conclude that the addition of the Chrysler to the policy in 2006 did not create a new insurance contract. In order to determine where the insurance contract was executed, I need to look to the formation of the original insurance policy for the Ford Truck.

There is a dearth of evidence on this question. In fact, I do not even know when Danner procured the initial insurance policy,[8] let alone how and where he entered into the contract. At this stage, the record contains only a collection of inferences that a reasonable jury could

---

imagine an individual who buys and registers a car in Colorado, moves to New Mexico, buys insurance online from a business incorporated in Delaware, located in Connecticut, but whose servers are located in California. Where was that contract consummated? Absent modifications to the *lex loci contractus* approach, choice of law cases could easily resemble law school exam questions.

[8] Harford stated that it "issued" a policy to Danner on December 18, 2005 (Doc. 49 at 2), but the proof of insurance issued on that date is labeled "renewal" (Doc. 49 Ex. 1). Thus, it appears as if this was not the date the policy was purchased.

interpret in either Sarkar's or Harford's favor. They could hold that the fact that Danner possibly[9] lived at all times in New Mexico and that the mailing address for the policy was in Las Cruces as evidence that the original contract was formed in New Mexico. Alternatively, they could interpret Hartford's issuance of an Oregon policy and the fact that the Ford was principally garaged in Oregon as proof that the contract was executed in Oregon. Since neither Sarkar nor Hartford has produced clear evidence as to where the contract was executed, I cannot resolve this matter on summary judgment.

Although the facts are insufficient to determine the location of the initial policy's formation, Sarkar offers an additional argument to circumvent this situation: renewal. She claims that every time the policy was renewed and Danner paid an annual premium, Danner and Hartford entered into a new contract. (Doc. 46 at 10.) Under her theory, the contract at issue for determining the choice of law provision is not the original policy; rather, it is the renewal policy from December 18, 2009, which was in force at the time of the accident. Since each premium was paid "from Las Cruces," including the December 2009 premium, and the renewal policy was delivered to Las Cruces, she asserts that the 2009-2010 policy was "executed" in New Mexico. Hartford flatly refutes this idea, claiming that these events do not constitute the formation of a new insurance contract in New Mexico, especially given that each renewal policy still indicated that the car was located in Oregon and policy was specific to Oregon. (Doc. 55 at 7.)

Relying on Eleventh Circuit law, Sarkar asserts that "each time an insurance contract is renewed, a separate and distinct policy comes into existence." (Doc. 57 at 5 (citing *Hercules Bumper's Inc. v. First State Ins. Co.*, 863 F.2d 839, 842 (11th Cir. 1989)).) The Tenth Circuit has

---

[9] Sarkar's testimony indicates that Danner was living in Las Cruces in 2004 (Doc. 46 Ex. 2 at 1), but there is no testimony that definitively indicates when he moved to Las Cruces. Sarkar also testified that Danner lived in Phoenix, Arizona, prior to moving to Las Cruces. (Doc. 46 Ex. 3 at 1.)  Since I do not know when the original insurance policy was purchased, it is possible he was in Arizona when the contract was formed.

similarly concluded that "the renewal of an insurance policy constitutes a separate contract to be governed by general contract principles." *Gov't Emp. Ins. Co. v. United States*, 400 F.2d 172, 174-75 (10th Cir. 1968). However, *Government Employees* is distinguishable from the present matter; the court was discussing which terms were included in a policy, and it was not addressing a choice of law question. *Id.* More importantly, *Government Employees* was not applying New Mexico law. *Id.* at 174 (stating the contract was governed by either the law of the District of Colombia or Alaska).

The New Mexico Supreme Court held that the reinstatement of a life insurance contract after the payment of a premium did not create a new contract; rather, the premium only continued the original policy. *In re White's Estate*, 89 P.2d 36, 37 (N.M. 1939). Years later, the court applied this rule to a choice of law question in *Miller v. Mutual Benefit Health & Accident Association*, 515, P.2d 841 (N.M. 1966.) The insurance company issued and delivered a health and accident policy to Oklahoma in 1926, and almost immediately thereafter, the insured moved to New Mexico. *Id.* at 842. Miller paid regular quarterly premiums up until 1962, and in 1938 two premiums were late. *Id.* The parties disagreed over which law governed the policy, and the court held "the policy was issued and delivered in Oklahoma, thereby making it an Oklahoma contract, and the reinstatement of the policy in 1938 merely had the effect of continuing the original Oklahoma contract." *Id.* at 843 (citing *In re White's Estate*, 89 P.2d at 36) (internal citations omitted).

While *In re White* and *Miller* are not particularly recent, they have never been overruled. More recent decisions have also distinguished between new insurance policies and renewal policies. While not directly on point, *Vigil* considered whether the addition of a new car onto a pre-existing policy created a "'new' policy *rather than a renewal* policy." 950 P.2d at 302

(emphasis added). This language indicates that there is something distinctly different between the creation of a new policy and the renewal of an existing one. Additionally, *Vigil* focused on the fact that "no new application was completed by Plaintiffs at any time" in concluding that the addition of a new car did not create a new policy. *Id.* At no point did it discuss whether the additional insurance payment for coverage of the new car created a new contract.

The *Conyers* court also gave the payment of premiums little effect in its choice of law analysis. In *Conyers*, the insurance policy at issue was purchased in August 1982, and the accident occurred in March 1985. *See* 784 P.2d at 987. In the interim, the Conyers resided in California and Nevada and presumably paid premiums from both locations, but the court gave this no consideration in determining the choice of law question. *Id.* at 987, 991.[10]

Ultimately, as another court has noted, "the payment of premiums in a particular state is . . . not the last act necessary to complete the insurance contract. Payment of premiums ensues from an insurance contract, but the location of payment does not have any bearing on the enforceability of the contract—the location is incidental." *In re The Celotex Corp.*, 194 B.R. 668, 676 (Bankr. M.D. Fla. 1996). Not only does this observation comport with New Mexico law, it logically makes sense. Premiums can be paid annually, bi-annually, quarterly, or monthly. While some choose to pay with a handwritten check, signed and mailed from a specific location, others may pay on the internet, while others yet might have an automatic payment feature that directly withdraws funds from a bank. If every payment created a new contract, the governing law of a policy could change from month to month depending on where and how the premium is paid. Possible inconsistency in payment method from one premium to another could have unseen legal

---

[10] Admittedly, the *Shope* court made mention of the premiums being paid from a Virginia account, but this was included in a list of other factors which demonstrated that the contract was formed in Virginia. 925 P.2d at 516.

consequences for the insured and the insurer. New Mexico's refusal to treat the payment of a premium as the creation of a new contract for choice of law purposes makes great practical sense. Accordingly, I reject Sarkar's argument that Danner formed a new contract in New Mexico when he paid his premium in December 2009. The resolution of this matter still hangs on an application of *lex loci contractus* to the original insurance policy with Hartford.

Alternatively, Sarkar asks me to hold that even if the contract were executed in Oregon, I should still apply New Mexico law as a matter of public policy. (Doc. 46 at 11-12.) New Mexico courts will not apply another state's law if there is a "countervailing interest that is fundamental and separate from general policies of contract interpretation." 925 P.2d at 517; *see also Tucker*, 956 F.2d at 218 ("[I]f the application of [a sister state's] law would violate New Mexico's public policy this Court is not bound [by the law.]"). However, *Shope* clarified that the application of a state's law that enforces anti-stacking provisions contained in insurance policies does not trigger this exception since the question of stacking is not a question of fundamental fairness, but purely one of contract interpretation. *See* 925 P.2d at 518. Since public policy will not prevent the implementation of Oregon law, I may not use this exception to avoid the rule of *lex loci contractus*.

## II.     Bad Faith

Hartford moves for summary judgment on Counts IV (breach of the covenant of good faith and fair dealing), V (insurance bad faith and breach of fiduciary duties), VI (unfair insurance claims practices), and VII (unfair trade practices), which it collectively refers to as the "bad faith" claims.[11] (Doc. 49 at 15.) "Under New Mexico law, an insurer who fails to pay a

---

[11] Sarkar did not object to Hartford's decision to group these claims and consider them collectively as bad faith claims. (Doc. 54 at 14-15.) Thus, I will also consider the claims together for ease of analysis. Hartford's motion also requests summary judgment on Count III (breach of contract), and it includes this claim in its analysis of the bad faith claims. (Doc. 49 at 15.) However, I will not consider

first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded." *Sloan v. State Farm Mut. Auto. Ins. Co. (In re Sloan),* 85 P.3d 230, 236 (N.M. 2004) (citing *State Farm Gen. Ins. Co. v. Clifton*, 527 P.2d 798, 800 (1974)). *In re Sloan* explained that "unfounded"

> does not mean "erroneous" or "incorrect"; it means essentially the same thing as "reckless disregard," in which the insurer "utterly fails to exercise care for the interests of the insured in denying or delaying payment on an insurance policy." It means an utter or total lack of foundation for an assertion of nonliability--an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim. It is synonymous with the word with which it is coupled: "frivolous."

*Id.* at 236 (internal citations omitted) (quotations omitted). If, however, the payment of a policy depends on an issue of law or fact that is "fairly debatable," then the failure to pay and subsequently litigate is not an act of bad faith. *See United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 709 P.2d 649, 660 (N.M. 1985) (Bivins, J. concurring) (citing *Anderson v. Dairyland Ins. Co.*, 637 P.2d 837 (N.M. 1981)).

Hartford believes that even if I were to find that New Mexico law applied, since it reasonably understood the location of the contract to be in Oregon, there was no bad faith on its part. (Doc. 49 at 15.) Sarkar counters that there are a number of facts that raise the "bad faith eyebrow," including that Hartford mailed policy information to New Mexico and Hartford's representative based the market value of the Chrysler after the accident on New Mexico values. (Doc. 54 at 14.)

Given my lengthy discussion of the confusion of the New Mexico's choice of law rule in insurance cases, it is fair to say that Hartford did not bring an utterly baseless claim. Moreover, the facts are debatable since neither party identified the appropriate contract, let alone

---

Count III under this rubric since a simple breach of contract claim does not include a bad faith component. I deny summary judgment on Count III.

conclusively establish where it was formed. Sarkar's focus on Danner's residence and the actual location of the car does not trump Harford's very reasonable belief that the car was in Oregon, nor does it resolve the question of where Danner was when he entered into the original insurance contract. For these reasons, even if the facts ultimately reveal that the contract was formed in New Mexico, Hartford was well within its rights to dispute this matter, so there can be no bad faith.

### CONCLUSION

New Mexico choice of law rules in a contact case hinge on a discreet set of facts, and the parties have not presented those facts to me so that I may resolve this issue. In the absence of such evidence, I must deny both of their motions insofar as they seek a declaratory judgment regarding the controlling law in this matter. Given the ambiguity in the case law and the fact that neither party has been able to easily uncover and present the relevant facts necessary for a ruling on the governing law, I cannot find that Hartford acted with bad faith. Thus, I grant in part Hartford's motion for summary judgment with respect to Sarkar's bad faith claims.

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge